UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                Plaintiff,

        v.

THOMAS WILLIAMS,

                                Defendant.
_____

REPORT & RECOMMENDATION

17-CR-6090L

## PRELIMINARY STATEMENT

By Order of Hon. Charles J. Siragusa, United States District Judge, dated June 27, 2017, all pretrial matters in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 4).

Defendant Thomas Williams ("Williams") has been charged in a one-count indictment with distributing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).  (Docket # 1).  Currently pending before this Court for report and recommendation are Williams's motions to suppress statements and recordings of telephone calls.[1]  (Docket # 20).  For the reasons discussed below, I recommend that the district court deny Williams's motions to suppress.

---

[1] Williams's omnibus motion also sought, *inter alia*, an audibility hearing, *Brady* material, Rule 404(b), 608 and 609 evidence, *Jencks* material, and preservation of rough notes.  (Docket # 20).  Each of these requests was either resolved by the parties or decided in open court by the undersigned on November 29, 2017.  (Docket ## 26, 27).

**FACTUAL BACKGROUND**

I. **Interview of Williams**

On January 12, 2018, this Court conducted an evidentiary hearing on Williams's motion to suppress statements. (Docket # 31). The government called Thomas Wiedrick ("Wiedrick") to testify. (Tr. 8-28).[2] Wiedrick testified that he has been employed as an investigator by the Livingston County Sheriff's Office for approximately twenty-six years and was currently assigned to the Livingston County Drug Task Force in a supervisory capacity. (Tr. 9). On June 26, 2017, Williams was arrested in California on a federal warrant issued in connection with methamphetamine distribution charges. (Tr. 10). When he was arrested, methamphetamine was found on his person, and a methamphetamine pipe was located in his truck. (Tr. 20-21). Wiedrick participated in a post-arrest interview of Williams and testified that he did not learn that methamphetamine and a pipe had been recovered from Williams until after the interview. (*Id.*).

When Wiedrick first encountered him, Williams was handcuffed in the back of a police car. (Tr. 10-11). Wiedrick got in the car and sat next to Williams in the back seat. (Tr. 20). Special Agent MacMillan ("MacMillan"), who also participated in and recorded the interview, sat in the front passenger seat. (Tr. 14, 19-20). Wiedrick testified that MacMillan advised Williams of his *Miranda* rights before the questioning began, and Williams indicated that he understood those rights and agreed to speak to the officers. (Tr. 11-12). The officers spoke with Williams for approximately twenty minutes until MacMillan terminated the interview. (Tr. 12, 16). Wiedrick initially testified that he was present for the entire interview,

---

[2] The transcript of the evidentiary hearing shall be referred to as "Tr." (Docket # 33).

but later clarified that he left the car for approximately two minutes at some point during the interview. (Tr. 26-27).

According to Wiedrick, individuals who are under the influence of alcohol or drugs typically exhibit restricted pupils, watery eyes, and slurred speech, and may display excitement or agitation, depending upon the substance consumed. (Tr. 12-13). In his experience, individuals who have consumed methamphetamine display similar characteristics, including dilated pupils, agitation, fidgetiness, difficulty staying on "track," excessive sweating, and glassy, watery eyes. (Tr. 24-25). Wiedrick testified that Williams did not display any of these characteristics or other behavior that led him question whether Williams was under the influence of methamphetamine, alcohol, or other substances. (Tr. 13-14, 25). Rather, Williams was polite and cooperative, and appeared to understand the questioning. (*Id.*). Neither Wiedrick nor MacMillan asked him whether he was under the influence of any drugs or alcohol during the interview. (Tr. 22-23).

During the interview, Williams attempted to bargain with the officers for release, but they did not make him any promises. (Tr. 14). Nor did they threaten him or make physical contact with him. (Tr. 12). Wiedrick testified that Williams never indicated that he wanted an attorney or did not want to speak to the officers. (*Id.*).

II. **Wiedrick's Affidavit**

The government has submitted a sworn affidavit from Wiedrick in opposition to Williams's motion to suppress recordings of telephone calls with a confidential informant. (Docket ## 44, 45). Wiedrick has affirmed that the confidential informant ("CI") agreed to cooperate with the Livingston County Drug Task Force and executed a written document

3

acknowledging, *inter alia*, "I am agreeing to cooperate with the Livingston County Drug Task Force of my own free will and accord, and not as a result of any intimidation or threats." (*Id.* at ¶ 4, Attachment A). On April 28, 2017, Wiedrick provided the CI with a digital audio recorder, which he instructed the CI to use to record his or her conversations with methamphetamine sources in California. (*Id.* at ¶ 6). The CI also completed an "Authorization to Intercept Conversation" form that authorized members of the task force to "listen to and record conversations" between the CI and other persons, including telephonic communications conducted in the presence of others. (*Id.* at ¶ 6, Attachment B).

According to Wiedrick, between April 28, 2017 and June 29, 2017, the CI turned over recordings of telephone conversations that the CI had recorded using the equipment provided by Wiedrick. (*Id.* at ¶ 7). Wiedrick downloaded the recordings and provided them to other agents involved in the investigation. (*Id.*). According to Wiedrick, the CI voluntarily made the recorded calls. (*Id.* at ¶ 5).

### III.   Williams's Affidavit

Williams has submitted an affidavit in support of his suppression motions. (Docket # 20-1). According to Williams, he smoked crystal methamphetamine on June 26, 2017, and believes he was under its influence when he was arrested, searched and interrogated later that day. (*Id.* at ¶¶ 3-4). During the search, the agents discovered methamphetamine and a pipe. (*Id.*). According to Williams, he was placed in a police vehicle and interrogated. (*Id.*). Williams has affirmed that he does not recall being informed of or waiving his *Miranda* rights. (*Id.*).

In his affidavit, Williams characterizes the recorded telephone calls with the CI as private conversations and stated that he never consented to the recording of them. (*Id.*).

## IV.    The Audio Recording

This Court has reviewed the audio recording of the June 26, 2017 interview with Williams. (G. Ex. 1). In relevant part, the recording demonstrates that one of the agents recited *Miranda* warnings to Williams and asked Williams if he understood his rights, and Williams replied, "Yes sir." (*Id.*). Williams was asked whether he wanted to answer some questions, and he replied, "Whatever you want, yes sir." (*Id.*). The officers then questioned Williams about their investigation. (*Id.*). Williams, in turn, attempted to negotiate leniency in exchange for cooperation. (*Id.*). The investigators told Williams that they could not make him any promises, but that they would inform the United States Attorney of any cooperation or information he provided.

## DISCUSSION

## I.    Motion to Suppress Statements

Williams seeks to suppress the statements he made to Wiedrick and MacMillan on the grounds that they were obtained in violation of his Fifth and Sixth Amendment rights. (Docket # 20 at 4-5, ¶¶ 8-11).[1] Williams maintains that at the time he made post-arrest statements to the officers, he was under the influence of methamphetamine and did not fully understand or properly waive his rights. (*Id.*).

---

[1] Following the hearing, counsel for Williams and the government requested leave to submit post-hearing submissions; they subsequently elected not to do so. (Docket # 42).

### A.     Williams's Fifth Amendment Challenge

*Miranda* establishes the well-settled rule that the government may not introduce as evidence statements made by a defendant that are the product of custodial interrogation unless it demonstrates that the defendant was first warned of his Fifth Amendment privilege against self-incrimination and then voluntarily waived that privilege. *Miranda v. Arizona*, 384 U.S. 436 (1966). No question exists on the record before the Court that Williams was in custody and subjected to interrogation during the interview in the back of the police car. The question is whether Williams validly waived his *Miranda* rights.

To establish a valid waiver, the government must prove by a preponderance of the evidence "(1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). To demonstrate the adequacy of a waiver, the government must do more than provide evidence that *Miranda* warnings were provided and that the defendant thereafter made an uncoerced statement. *See Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010). The government "must make the additional showing that the accused understood the[] rights." *See id.* "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Id.* Statements made while the defendant was intoxicated or under the influence of drugs or alcohol are not *per se* involuntary. *Scott v. Fisher*, 652 F. Supp. 2d 380, 431 (W.D.N.Y. 2009) (collecting cases). Rather, the court must evaluate whether the defendant understood his rights and knowingly waived them. *See United States v. Wyche*, 307 F. Supp. 2d 453, 463 (E.D.N.Y. 2004); *Avincola v. Stinson*, 60 F. Supp. 2d 133, 160 (S.D.N.Y. 1999).

In examining whether a statement was made voluntarily, a court must consider the totality of the circumstances in which it was given "to determine whether the government agents' conduct 'was such as to overbear [a defendant's] will to resist and bring about [statements] not freely self-determined.'" *United States v. Kaba*, 999 F.2d 47, 51 (2d Cir.) (quoting *United States v. Guarno*, 819 F.2d 28, 30 (2d Cir. 1987) (citations omitted)), *cert. denied*, 510 U.S. 1003 (1993).  In evaluating the totality of the circumstances, the court must assess:  "(1) the characteristics of the accused, (2) the conditions of the interrogation, and (3) the conduct of law enforcement officials."  *United States v. Awan*, 384 F. App'x 9, 14 (2d Cir. 2010) (summary order) (quoting *Green v. Scully*, 850 F.2d 894, 901-02 (2d Cir.), *cert. denied*, 488 U.S. 945 (1988)), *cert. denied*, 562 U.S. 1170 (2011).  Where circumstances suggest evidence of "brutality, [p]sychological duress, threats, [or] unduly prolonged interrogation," statements will be deemed involuntary.  *United States v. Moore*, 670 F.3d 222, 233 (2d Cir.) (alteration in original) (quoting *United States v. Verdugo*, 617 F.3d 565, 575 (1st Cir.), *cert. denied*, 562 U.S. 1019 (2010)), *cert. denied*, 567 U.S. 943 (2012).  Likewise, "when a person is unconscious or drugged or otherwise lacks capacity for conscious choice, a confession cannot be voluntary." *United States v. Taylor*, 745 F.3d 15, 24 (2d Cir. 2014).

On this record, I find that Williams understood his *Miranda* rights and knowingly waived them before speaking to MacMillan and Wiedrick.  Wiedrick testified, and the audio recording demonstrates, that MacMillan verbally informed Williams of his *Miranda* rights prior to questioning him, and Williams indicated that he understood his rights and agreed to speak with the officers.  At no time during the interview did Williams request an attorney or indicate that he wanted to stop speaking.  Williams was not threatened, nor were any promises made,

other than to bring any cooperation to the attention of the United States Attorney, in order to induce him to speak.

Moreover, Wiedrick testified that Williams did not appear to be under the influence of drugs or alcohol, and appeared to comprehend the interview. According to Wiedrick, Williams's speech was not slurred, and he did not display any characteristics of drug or alcohol intoxication. Williams answered the agents' questions and also attempted to negotiate leniency for himself and his girlfriend in exchange for providing information. The audio recording itself is consistent with Wiedrick's testimony about Williams's demeanor during the interview. Accordingly, I conclude that the record establishes that Williams knowingly waived his *Miranda* rights.

The credible testimony also establishes that Williams's waiver and subsequent statements were voluntary. Nothing in the record suggests that the circumstances of Williams's arrest involved coercive or intimidating characteristics, and, as explained above, Wiedrick testified that Williams was coherent and cooperative throughout the interview. Although Williams maintains that he was under the influence of methamphetamine, Wiedrick credibly testified that Williams did not display any characteristics to suggest that he was under the influence of methamphetamine or any other substance. Nothing in the audio recording of the interview appears to conflict with Wiedrick's testimony. During the interview, which lasted only twenty minutes, neither Wiedrick nor MacMillan made any promises to or threatened or coerced Williams to induce him to speak. Finally, the conditions under which the statements were made do not suggest that Williams was subjected to any undue influence to coerce a statement. On this record, I conclude that Williams's waiver and statements were voluntary, and I recommend that

Williams's motion to suppress statements on the grounds that they were made in violation of his Fifth Amendment rights be denied.

### B. Williams's Sixth Amendment Challenge

A defendant's right to counsel under the Sixth Amendment attaches "at the 'initiation of adversary judicial proceedings,' such as the filing of an indictment." *United States v. Yousef*, 327 F.3d 56, 140 (2d Cir.) (quoting *United States v. Gouveia*, 467 U.S. 180, 188 (1984); *United States v. Abdi*, 142 F.3d 566, 569 (2d Cir. 1998)), *cert denied*, 540 U.S. 933 (2003); *see Fellers v. United States*, 540 U.S. 519, 523 (2004) (Sixth Amendment is "triggered at or after the time that judicial proceedings have been initiated") (quoting *Brewer v. Williams*, 430 U.S. 387, 398 (1977)). "An accused is denied 'the basic protections' of the Sixth Amendment 'when there [is] used against him at his trial evidence of his own incriminating words, which federal agents ... deliberately elicited from him after he had been indicted and in the absence of his counsel." *Fellers v. United States*, 540 U.S. at 523 (quoting *Massiah v. United States*, 377 U.S. 201, 206 (1964)). In other words, "[o]nce the right has attached, the Sixth Amendment renders inadmissible in the [g]overnment's case-in-chief statements elicited by the [g]overnment outside the presence of a defendant's counsel that are not accompanied by a waiver of this right." *United States v. Yousef*, 327 F.3d at 140 (citing *United States v. Henry*, 447 U.S. 264, 273-74 (1980)). The Sixth Amendment "deliberate-elicitation" standard is distinguishable from the "custodial-interrogation" standard utilized in a Fifth Amendment analysis. *Fellers*, 540 U.S. at 524.

Of course, it is equally well-established that a defendant may validly waive his Sixth Amendment rights. *Patterson v. Illinois*, 487 U.S. 285, 296 (1988) ("[a]s a general matter, then, an accused who is admonished with the warnings prescribed by th[e] Court in *Miranda* . . .

9

has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one"); *Yousef*, 327 F.3d at 140 ("[i]t is settled law, however, that the attachment of the Sixth Amendment right to counsel, by itself, does not preclude a defendant from validly waiving his right to counsel").

No question exists that Williams's Sixth Amendment rights had attached at the time of his arrest. The indictment charging Williams was returned and filed on June 20, 2017, almost one week before his arrest and interview. (Docket # 1; Tr. 10). Thus, the sole Sixth Amendment question is whether Williams had validly waived those rights prior to making the challenged statements. I find that he had.

As discussed more fully above, Williams was informed of his *Miranda* rights by MacMillan and was specifically advised that he had the right to consult an attorney prior to questioning and to have a lawyer present during the interview. (Tr. 11-12; G. Ex. 1). Williams was also informed that an attorney would be appointed for him if he could not afford one. (*Id.*). Williams affirmatively indicated that he understood his rights and agreed to speak with the officers. On this record, I find that Williams was adequately advised of his Sixth Amendment right to counsel and knowingly and voluntarily waived that right when he agreed to speak with the officers. *See Yousef*, 327 F.3d at 142 (statements made by defendant after indictment were not obtained in violation of the Sixth Amendment where defendant had received *Miranda* warnings, had voluntarily waived those rights, and had not invoked his right to counsel). Accordingly, I recommend denial of Williams's motion to suppress statements on the grounds that they were made in violation of his Sixth Amendment rights.

10

## II.  Motion to Suppress Telephone Recordings

I turn finally to Williams's motion to suppress telephone recordings. (Docket # 20 at ¶¶ 4-7). Williams maintains that he did not consent to the recordings and that, at the time he filed his motion, the government had not provided any proof that the other participant in the calls, the CI, had consented. (*Id.*). In response, the government submitted Wiedrick's affidavit, to which is attached a copy of the form signed by the CI consenting to the recording of the telephone calls.[2] (Docket ## 44, 45).

In the absence of judicial authorization, Title III generally prohibits the intentional interception of telephone calls and admission at trial of any recordings of unlawfully intercepted telephone calls. *United States v. Friedman*, 300 F.3d 111, 120 (2d Cir. 2002) (citing 18 U.S.C. §§ 2510-2522), *cert. denied*, 538 U.S. 981 (2003). An exception exists where a party to the communication has consented to its interception. *See* 18 U.S.C. § 2511(2)(c) ("[i]t shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception"); *United States v. Rodriguez*, 169 F. Supp. 2d 319, 326 (D. Vt. 2001) ("[u]nder 18 U.S.C. § 2511(2)(c), it is not unlawful for a police officer to 'intercept' a wire communication where 'one of the parties to the communication has given prior consent'") (quoting 18 U.S.C. § 2511(c)(2)).

Nothing in the record disputes Wiedrick's sworn representations that the CI executed a consent form, voluntarily recorded his conversations with Williams, and subsequently provided the recordings to Wiedrick. Thus, I credit them and find no basis to warrant the suppression of the recordings. *See United States v. Bethea*, 388 F. App'x 20, *21 (2d Cir. 2010)

---

[2] Despite being provided an opportunity to respond to that affidavit, Williams declined to do so. (Docket ## 46; 33 at 4).

11

(summary order) ("[t]he informant's consent allowing the government to record the conversations rendered those recordings lawful under both Title III . . . and the Fourth Amendment") (internal citations omitted); *United States v. Barone*, 913 F.2d 46, 49 (2d Cir. 1990) ("[b]ecause the government made the recording with the consent and cooperation of [the informant] there was no need to inform [the defendant] or obtain a court order"); *United States v. Houston*, 2013 WL 149653, *1 (E.D.N.Y. 2013) ("it is well settled that a law enforcement officer or a person acting under color of law – here, a confidential informant – may intercept a wire, oral or electronic communication without a court order when one of the parties to the communication has consented to the interception").  Accordingly, I recommend that the district court deny Williams's motion to suppress the telephone recordings.

## CONCLUSION

For the reasons stated above, I recommend that the district court deny Williams's motions to suppress his post-arrest statements and his recorded telephone calls with the CI. (Docket # 20).

                                        *s/Marian W. Payson*
                                        MARIAN W. PAYSON
                                      United States Magistrate Judge

Dated: Rochester, New York
       April 9, 2018

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.[5]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See*, *e.g.*, *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

                                        *s/Marian W. Payson*
                                        MARIAN W. PAYSON
                                        United States Magistrate Judge

Dated: Rochester, New York
         April 9, 2018

---

[5] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).